# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| JULIE A WERTH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-cv-00017-RK |
| CHRISTINE WORMUTH, SECRETARY OF THE US ARMY; | ) ) ) ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the motion for summary judgment filed by Defendant Christine Wormuth, in her official capacity as Secretary of the Department of the Army.[1] (Doc. 37.) The motion is fully briefed. (Docs. 38, 39.) For the reasons below, the Court **GRANTS** the motion for summary judgment.

### Background[2]

The United States Army Corps of Engineers (referred to interchangeably as "Corps" or "Defendant") hired Plaintiff Julie Werth on or about August 21, 2017, as an Engineering Technician (Drafting) in the Corps' Portland, Oregon office. (Doc. 37 at ¶ 2.) Within a few months, Plaintiff transferred to the Kansas City, Missouri, office and started working for the Corps as an Engineering Technician (Mechanical). (*Id.* at ¶¶ 6, 35.) Plaintiff's first-line supervisor was Mark Little, Chief of the Mechanical/Electrical Design Section. (*Id.* at ¶ 7.) Plaintiff worked with Cathy Davis, Larry Ward, and Mary Delaet. (*Id.* at ¶¶ 8-9.)

---

[1] The Department of the Army includes the United States Army Corps of Engineers. (Doc. 37 at 1.)

[2] Plaintiff Julie Werth's complaint is divided into three claims: (1) breach of contract, (2) reprisal/hostile work environment, and (3) perjury/obstruction. (Doc. 4 at 7.) In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff indicates she "would like to limit the scope of her claim against [Defendant] to her allegations of Reprisal/Hostile Work Environment" and drop her claims for breach of contract and perjury/obstruction. (Doc. 38 at 10.) As such the Court will address only the facts and arguments pertinent to Plaintiff's "reprisal/hostile work environment" claims, dismissing Plaintiff's breach of contract and perjury/obstruction claims. In addition, in this background section, the Court has omitted some properly controverted facts, assertions that are immaterial to the resolution of the pending motion, assertions that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

Shortly after transferring to the Kansas City office, Plaintiff became concerned about Ms. Davis' mistreatment of Ms. Delaet, including making fun of her weight and age. (*Id*. at ¶ 9.) Plaintiff testified that after she befriended Ms. Delaet, Ms. Davis stopped being friends with her, after which Plaintiff had very little interaction with Ms. Davis. (*Id.* at ¶¶ 10-11.)

Plaintiff made a complaint to Kelly Meisner in Human Resources for the Corps about Ms. Davis' treatment of Ms. Delaet. (*Id.* at ¶ 12; Doc. 39 at ¶ 15.)

On May 14, 2018, Mr. Little gave Plaintiff her annual performance appraisal. (Doc. 37 at ¶ 15.) The form's "Performance Evaluation" section had the "Success All or Excellence" box checked. (Doc. 38-2 at 2.) The written evaluation further noted that Plaintiff "[c]ommunicates well with some team members, but communication tends to break down in difficult situations," Plaintiff "[b]ecomes defensive when things don't play out as expected," and Plaintiff is "[c]onfrontational and escalates situations instead of diffusing them." (Doc. 37 at ¶ 16; Doc. 38-2 at 2.)

On July 19, 2018, Plaintiff emailed Mr. Little (and sent a blind carbon copy to Ms. Meisner) reporting that Mr. Ward "became very agitated and shut [her] down" in a meeting and told her she should leave the meeting "if [she] wanted to talk . . . out in the hallway[,]" that he "was acting so erratic" and "stood up and left the meeting room threatening [to] go report [her] behavior to [Mr. Little]." (Doc. 38 at ¶ 20; Doc. 38-2 at 16.) Then Plaintiff found out at a meeting that over the preceding weekend, Mr. Ward had changed the fonts and formatting on certain architectural drawings he had prepared such that they did not match the fonts and formatting on the general notes that Plaintiff had prepared for the project. (Doc. 37 at ¶ 19.) In an email to Mr. Little on July 30, 2018, Plaintiff contended Mr. Ward was attempting to sabotage Plaintiff's work to make it seem like she was not following standard operation processes. (Doc. 38 at ¶ 21.) Later that day, Plaintiff received a written counseling memorandum ("memo") from Mr. Little to inform her of his "concerns regarding [her] interpersonal communications with co-workers; as well as, [her] willingness to comply with District processes." (Doc. 37 at ¶ 20-21; Doc. 37-8 at 1; Doc. 38 at ¶ 22.) The memo further stated Mr. Little had previously raised these same concerns during Plaintiff's May 14, 2018 evaluation, but "since that time, [he had] continue[d] to receive reports of inappropriate behavior that [was] described [as] argumentative and aggressive." (Doc. 37 at ¶ 22; Doc. 37-8 at 1.) The memo explained that it had been reported that Plaintiff

> chose to disregard established procedures, even after the reasoning for these [was] explained. As an example, [Plaintiff] named all of the view folders on [her] Revit Projects so that they [were] no longer in compliance with the District and USACE Headquarters standards. It also [was] reported, by multiple sources, that [Plaintiff was] resistant to constructive criticism and that [she was] argumentative when someone disagree[d] with [her]. For instance, during the MUNS MX Storage Facility BIM Pit, it [was] reported that [Plaintiff] shouted at another employee to express [her] displeasure with the District's BIM Procedures. Several different District employees reported incidents in which they [were] subject[ed] to inappropriate behavior in their interactions with [Plaintiff].

(Doc. 37 at ¶ 23; Doc. 37-8 at 1.) The memo asserted that Plaintiff's conduct was "inappropriate and inconsistent with the basic principles of ethical conduct that Army employees are expected to follow and it [was] disruptive to [the Corps'] ability to effectively execute [its] mission," and specifically informed Plaintiff "not to repeat the behavior," concluding:

> As a reminder, you are serving a two-year probationary period, which began on 21 August 2017. The probationary period is an important part of the hiring process and during this time, supervisors are required to study an employee's potential closely to determine whether he/she is suited for successful government work. When it becomes apparent that an employee's conduct, general character traits or capacities do not meet the requirements for satisfactory service, the supervisor is required to initiate action to separate the employee. Your failure to appropriately respond to this counseling may result in the initiation of formal action to terminate your employment during your probationary period. I hope that this counseling will preclude such action.

(Doc. 37 at ¶ 24; Doc. 37-8 at 1-2.)

The next day, July 31, 2018, Plaintiff requested a meeting with Ms. Meisner to discuss the memo, which occurred the very next day. (Doc. 38 at ¶ 23; Doc. 38-2 at 20-22.) Plaintiff was scheduled to have August 2 and 3 off from work to care for her mother who was recovering from surgery. (Doc. 38 at ¶ 25.) Mr. Little contacted Ms. Meisner on August 2, 2018, due to continuing "multiple complaints by individuals related to [Plaintiff's] behavior and the issues it was causing within the staff." (Doc. 37 at ¶ 25; Doc. 37-9 at 4.) Ms. Meisner reviewed the complaints, "which described [Plaintiff's] behavior as harassing, hostile, causing feelings of being unsafe, and disrespectful," and advised Mr. Little "that based on [Plaintiff's] prior counseling and probationary status, [the Corps] could proceed with termination of [Plaintiff,] a probationary employee[,] based on misconduct." (Doc. 37 at ¶ 26-27; Doc. 37-9 at 4.)

On August 6, 2018, Mr. Little issued a notification of termination to Plaintiff, which stated that Plaintiff's "behavior in the workplace over the past few months ha[d] escalated recently,

3

resulting in multiple complaints from co-workers who [were] questioning their safety within the workplace" and that Plaintiff's "demeanor ha[d] been described as disrespectful, berating, caustic, hostile and intimidating[,]" which was "creat[ing] a negative work environment and [was] causing a significant disruption to the Design Branch's ability to accomplish the mission." (Doc. 37 at ¶¶ 28-29; Doc. 37-10 at ¶ 1.)  The notification concluded that Plaintiff's "[t]ermination during [her] probationary period [was] appropriate when [it became] apparent that [Plaintiff's] conduct [did] not demonstrate [her] fitness for continued employment." (Doc. 37 at ¶ 30; Doc. 37-10 at ¶ 3.)  According to the notification, Plaintiff's employment with the Corps was terminated for misconduct on August 6, 2018, within the first year of her initial two-year probationary period. (Doc. 37 at ¶ 31; Doc. 37-10 at ¶¶ 2-3.)

Plaintiff's second level supervisor, James Turner, stated in his declaration that Plaintiff's termination was based on Mr. Ward's allegations against Plaintiff, that Plaintiff was causing distractions, and that as a probationary employee, she did not have the same protections as other employees who are protected by the Federal merit system. (Doc. 38 at ¶ 26; Doc. 38-2 at 38-39.)

About one month after her termination, on September 12, 2018, Plaintiff contacted an Equal Opportunity Office counselor about issues related to her prior employment at the Corps. (Doc. 37 at ¶ 32.)  After unsuccessful informal counseling, Plaintiff filed an administrative complaint of discrimination on or about November 25, 2018. (*Id.* at ¶ 33.)  The administrative complaint of discrimination alleged:  (1) a retaliatory hostile work environment (because she complained about the alleged age-based mistreatment of Ms. Delaet) and illegal retaliation for her termination, and (2) gender discrimination for receiving the July 30, 2018 counseling memorandum and for her termination. (*Id.*)  Before she was terminated by the Corps, Plaintiff had not filed any complaints of discrimination. (*Id.* at ¶ 34.)  With respect to her claim of a hostile work environment during her eight-month tenure in Kansas City, Plaintiff alleged that:  (1) in or around the end of April 2018, Ms. Davis "shouted" at her and "put a hand" in Plaintiff's face to try to get her to stop talking; and (2) in July 2018, Mr. Ward was "extremely aggressive and demeaning towards" Plaintiff in a meeting, specifically telling her that no one wanted to hear her talk. (*Id.* at ¶ 35.)

On November 6, 2020, the Equal Employment Opportunity Commission (EEOC) issued their decision and order granting the Corps' motion for summary judgment. (Doc. 38 at ¶ 27.)

Rather than appealing the decision of the EEOC, Plaintiff filed the instant claim against the Corps in this Court on January 12, 2021. (*Id.*; Doc. 4.)

Plaintiff's complaint included three claims, two of which she abandoned in her response to Defendant's motion for summary judgment. *See supra* at 1 n.2. The remaining claim is labeled "reprisal/hostile work environment." (Doc. 4 at 7.) In making this claim, Plaintiff alleges as follows:

- Plaintiff was "subjected to reprisal after [she] reported an EEOC violation that [she] witnessed happen to . . . [Ms.] DeLaet," and that the reprisal "resulted in a hostile work environment." (Doc. 4 at 7.)
- Ms. Davis "tried to exclude [her] from meetings that [she] was assigned to attend by upper management" and "physically backed [Plaintiff] into [her] cubicle while waving [Ms. Davis'] hand directly in front of [Plaintiff's] face." (*Id.*) Plaintiff alleges Ms. Davis then "made false and damaging allegations against [her] that [her] managers refused to investigate or even make [her] aware of, but ultimately resulted in [her] wrongful termination." (*Id.*)
- Mr. Ward "interrupted [her] in a meeting and told [her] no one wanted to hear what [she] was saying and told [her] to be quiet." (*Id.*) Mr. Ward "sabotaged the drawings that [her] group was attempting to submit" and "made false and outlandish allegations against [her] which [her] managers refused to investigate or even make [her] aware of, but ultimately resulted in [her] wrongful termination." (*Id.*)
- Mr. Little's written counseling "included various false and defamatory allegations" and that the termination notice also included "false and defamatory allegations which could have easily been disproven had [Plaintiff] been given the opportunity to become aware of the allegations and defend [herself] against them by supplying proof and witnesses." (*Id.*)

**Legal Standard**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

summary judgment should be granted." *Smith-Bunge v. Wis. Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Rule 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Rule 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Rule 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [she] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

## Discussion

### I. Retaliation

"To survive a motion for summary judgment on a retaliation claim, [Plaintiff] either must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas*[3] burden-shifting framework." *Yearns v. Koss Constr. Co.*, 964 F.3d 671, 674 (8th Cir. 2020) (internal quotation omitted). Because Plaintiff has not produced any direct evidence, the Court will apply the *McDonnell Douglas* burden-shifting framework. *Id.*

> Under this framework, [Plaintiff] must establish a prima facie claim of retaliation to survive summary judgment by providing evidence from which a jury could conclude that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between her protected activity and the adverse employment action.

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6

*Fezard v. United Cerebral Palsy of Cent. Ark.*, 809 F.3d 1006, 1011 (8th Cir. 2016) (citation omitted). However, if Defendant comes forward with evidence of a legitimate, nonretaliatory basis for the adverse employment action, Plaintiff must then point to some evidence that Defendant's asserted basis is pretextual. *Id.*

    A.    **Protected Activity**

Defendant argues that Plaintiff cannot show any prior protected EEO activity based only on her "bare allegation that she notified the Human Resources office that Mary Delaet was being harassed because of her age." (Doc. 37 at 6.) In Plaintiff's responsive brief, she argues, without citing any legal authority, that she engaged in protected activity by reporting to Ms. Meisner the mistreatment of Ms. Delaet. (Doc. 38 at 11.)

Discrimination based on the protected categories of "race, color, religion, sex, or national origin" is made unlawful by Title VII. 42 U.S.C.A. § 2000e-2(a)(1). "Title VII [also] prohibits employers from retaliating against employees for engaging in two broad categories of protected activity: (1) opposing any discrimination made unlawful by Title VII or (2) making a charge or participating in any manner in an investigation or proceeding under Title VII." *Parker v. City of St. Joseph, Mo.*, No. 04-6054-CV-SJ-GAF, 2008 WL 11337946, at *7 (W.D. Mo. June 6, 2008) (quoting *Bogren v. Minnesota*, 236 F.3d 399, 407-08 (8th Cir. 2000)).

Here, Plaintiff discussed her concerns about the alleged age-related mistreatment of Ms. Delaet with Ms. Meisner in the Human Resources office. Discrimination based on age, however, is not made unlawful by Title VII. As such, "no one could reasonably believe that the incident [Plaintiff raised with Ms. Meisner] violated Title VII." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

On this record, Plaintiff fails to raise a triable question of material fact as to whether she engaged in a protected activity.

    B.    **Causation**

Even if Plaintiff could show she participated in a protected activity, Defendant further argues that Plaintiff cannot establish her prima facie case of retaliation because she has failed to provide evidence to show a causal link between her protected activity and claimed adverse employment actions. (Doc. 37 at 13.) Plaintiff counters that (1) when she reported instances of reprisal to Ms. Meisner or to Mr. Little, she was reprimanded, (2) during the EEOC investigation, Ms. Meisner and Mr. Little claimed her reports never happened and that they were unaware of

"Davis and Ward harassing or falsely accusing [Plaintiff], and (3) the only explanation is that Ms. Meisner and Mr. Little "wanted to get her terminated as quickly as possible so they could conceal how they were treating DeLaet." (Doc. 38 at 12.) Plaintiff does not cite to the record or to any authority in support of her arguments on this element.

Plaintiff "must prove that her opposition to unlawful discrimination was the 'but for' cause of the employer's adverse action." *Schottel v. Neb. State Coll. Sys.*, 42 F.4th 976, 983 (8th Cir. 2022). Where there is an absence of knowledge of protected activity, there is no causation. *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 645 (8th Cir. 2009).

Even if age were a category protected under Title VII, which the Court concludes it is not, Plaintiff has pointed to no evidence showing that Mr. Little was aware that Plaintiff had complained about Ms. Delaet being harassed because of her age. According to Mr. Little's declaration, he did not learn that Plaintiff had raised concerns that Ms. Delaet was being harassed based on age until on or around October of 2018 (which was after Plaintiff had been terminated). (Doc. 37 at ¶ 13.) Plaintiff testified that Mr. Little was aware of her complaint to Human Resources, but when asked what evidence she had of such awareness before October of 2018, she answered:

> All of his [Mr. Little's] behavior. Everything he did from then on. A very good employee doing really good, taking somebody that's not doing so well, making them better. All of a sudden, I'm getting warnings. It got crazy. It got, it turned bizarre.

(*Id.* at ¶ 14; Doc. 37-1 at 49.) Ms. Meisner's notes regarding Plaintiff's conversation with her reflect that Ms. Meisner perceived the complaint as "perceived harassment of Cathy Davis towards Mary DeLaet" and that the issue was "Delaet and Davis not getting along," and that she told Plaintiff "if she believes someone is being harassed that she should report it through the appropriate channels." (Doc. 38-2 at 21-22.) Both Mr. Little and Ms. Miesner denied under oath that Plaintiff ever mentioned anything about harassment of Ms. Delaet based on her age. Plaintiff has not presented evidence to raise a question of fact as to whether Mr. Little, the decisionmaker, was aware that Plaintiff had reported to Defendant that Ms. Delaet was mistreated based on her age. In sum, there is no evidence Defendant was aware that any alleged mistreatment was alleged to be

based on a protected class, as opposed to a personality conflict with a coworker or the like. As such, she cannot raise a question of material fact as to causation.[4]

## II. Hostile Work Environment

Next, Defendant asserts that Plaintiff's hostile work environment claims do not meet the initial threshold showings that the conduct complained of was sufficiently severe and that the conduct resulted from her participation in protected activities. (Doc. 37 at 19.) Plaintiff offers no specific arguments regarding her hostile work environment claim in her brief.

The Eighth Circuit "has said that under Supreme Court precedent, retaliation claims under Title VII [can] be based on a hostile work environment and need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment." *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-67 (2006)). However, "trivial harms"; "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing"; "petty slights or minor annoyances"; "personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers"; and "petty slights, minor annoyances, and simple lack of good manners" do not give rise to an action for retaliatory hostile work environment. *Burlington N.*, 548 U.S. at 68 (internal citations and quotations omitted).

Here, the Court construes Plaintiff as asserting her hostile work environment claim as based on the following facts and evidence set forth in the briefing of this motion:[5] the end of a friendship with Ms. Davis, a negative performance appraisal, an allegedly "agitated" and "erratic" verbal interaction with Mr. Ward, Mr. Ward changing fonts and formatting on a project both he and Plaintiff worked on, and a negative memo from Mr. Little regarding his continued concern with Plaintiff's ongoing performance issues first raised in the earlier performance appraisal. These

---

[4] Because the Court finds both that Plaintiff fails to make a showing as to protected activity and as to causation sufficient to defeat Defendant's motion for summary judgment, the Court does not address the further steps in the *McDonnell Douglas* burden-shifting framework. The Court notes, however, it would otherwise find that Defendant has articulated a legitimate non-retaliatory reason for Plaintiff's termination, namely, Plaintiff's disruptive conduct and insubordination. Similarly, the Court would otherwise find that Plaintiff has failed to come forward with any evidence of record to establish Defendant's asserted basis is merely pretextual.

[5] The Court reiterates that in resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Rule 56(c); *see also Thomas,* 483 F.3d at 527 (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment).

9

events are not sufficient to meet the demanding standard for hostile work environment claims under Title VII. *Cf. Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016) ("More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment."). Even when viewed in the light most favorable to Plaintiff, the Court finds Plaintiff has not raised a triable question of material fact as to whether she experienced harassment so severe or pervasive as to (1) create a hostile or abusive working environment, (2) alter or affect the terms, privileges, or conditions of her employment, or (3) constitute a materially adverse retaliatory action.

## Conclusion

After careful consideration, Defendant's motion for summary judgment (Doc. 37) is **GRANTED.**

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

DATED: February 28, 2023